Good morning, Your Honor. Frank Weiser, representing the Plaintiff and Appellant Roger Wang on behalf of the HYW Limited Partnership. I'd like to reserve five minutes for rebuttal. I'd like to address, of course, what the court had ordered, the direct marketing association versus Broll case. And I'd like to first direct what I think, I do think the case does change the position of a Plaintiff and Appellant. I'd like to go first to what I think are the clearly, the claims that are clearly subject to reversal by the district court. And I don't blame the district court. I should be clear, I don't think we meant that order to be, this controls the case. It just came out subsequent to briefing when, right, certain people were appearing. Correct. Correct. And I'm not saying that that's what the court said. But I do think in looking at that case that the holding of the case does control at least some of the claims that are within this lawsuit. The one that I think clearly it controls is the claim that in September of 2013, after the assessment by the city, a city of finance official came onto the property without consent or a warrant to investigate the property. And that was after the assessment. And the assessment was still barred under the Tax Injunction Act. And I think relying upon authority from this court, from the Ninth Circuit, and there's one specific case, Geron's West, Inc. versus California State Board of Equalization, to the effect that even an indirect restraint of either the assessment or collection of the tax is still subject to the Tax Injunction Act. I think the direct marketing association versus Broll case makes very clear that the word restrain has two meanings. It can be taken broadly, which would be to inhibit. And in that sense, the district court would be correct. And I think the Geron's case would be correct. But then taken narrowly, as the Supreme Court did in the direct marketing association case, you would have to actually restrain, actually enjoin either the assessment or the collection of the tax. So I think that particular portion of the complaint clearly is controlled by direct marketing association. Now, there's another portion, which is another Fourth Amendment claim, as the Court knows, and that's the portion under LAMC 21.15, subsection B. That's the section that was used to audit the books and records as a condition of licensing in which Mr. Wang did not submit. He objected to that. He asserted his Fourth Amendment rights under Ninth Circuit authority. He was then assessed, given an estimated assessment of actual attacks and penalties. To the effect that we are claiming that that particular section is unconstitutional, set aside from the fact of the actual assessment, I think direct marketing also controls. And there, once again, what the Court's ---- Roberts, I'm lost here, because they made the request to do the audit and so forth, but your objection, your client's objection stood. There was no audit or inspection of the books and records, was there? But there was no, but there was an estimate, there was an estimate based on that. Well, the estimate, how else are you going to make an assessment without making the estimate? Well, I disagree. I think the section they relied on to make the demand was based on this 21.15, subsection B. What I think the Court is saying is that there was an actual assessment afterwards. But what I'm saying is that part of the challenge we're making is that that particular section is unconstitutional in and of itself. How? By the fact that it makes it as a condition that one must submit to the audit. Now, it may be in fact that one doesn't. So it couldn't be a condition. Well, he may not have submitted in his particular case, but the statute or the ordinance as it stands on its face cannot allow, cannot demand that he make that as a, that the city have a right to make that as a condition of licensing. He can still facially challenge the ordinance itself, regardless of whether he has applied to him, whether he in fact submitted it or not. And that's what I'm saying. We have a claim in the first claim for relief that that ordinance in and of itself is unconstitutional. So to that effect, I would say that direct marketing does apply because it's a pre-assessment ordinance. It's not the actual assessment itself. What happens afterwards may be subject to the Tax Injunction Act, but not the actual ordinance itself that's at play here, 21.15, subsection B. Your complaint is what the city didn't do. You're complaining about the city's inspection of books and records that never took place because it theoretically could have taken place. No, I think there were two parts to the claim. One was that the city used an ordinance that would be facially unconstitutional. It didn't use the ordinance because your client's books and records were never inspected. Well, it certainly used the ordinance in the sense that it demanded that the appellant submit to the ordinance, allow the inspection, and then when he didn't, that's when the assessment came into play. But I think my client still has a right to facially challenge the ordinance itself, whether in fact he has actually submitted or not. The facial challenge is independent of whether in fact he has submitted or not. It doesn't matter whether it's as applied to him or not, although I think in this case it was as applied because I think what triggered the estimated assessment is not submitting to the audit. And it's the assessment itself that would be subject to the Tax Injunction Act, not the actual ordinance itself that's being attacked as a pre-assessment procedure that the city implemented or attempted to implement. How does your client have standing to bring a facial challenge if the ordinance wasn't in fact applied to him? Well, I say it was. He certainly had an assessment. They've certainly, we've pled facts that they've asked for it under that ordinance and that he denied it under that ordinance and that that's what triggered the estimated assessment. He didn't allow the application of that ordinance by submitting to it and that's what triggered it. I would think that would be an injury in fact that would satisfy Article 3 standing. Turning to the actual assessment itself, there we get into the issue of the penalty and the circuit split between the Seventh and Fifth Circuit. And that I would submit there, the Direct Marketing Association does have some bearing on that. And I think at page 17 of appellants of the city's answering brief, they make the disrecord that our argument that the Tax Injunction Act can somehow track the Anti- Injunction Act, the Federal Anti-Injunction Act are two disparate acts and therefore there's no analogy between it. That was directly held to be not the case in the Direct Marketing Association. And there Justice Thomas indicated in his opinion that the Tax Injunction Act in fact was modeled after the Anti-Injunction Act and therefore we take the terms to be the same. So the words restrain, assessment, levy, collection are taken to be the same. And then my argument under Sebelius was that for purposes of the Anti-Injunction Act, the statutory text of the Affordable Care Act, which used the word penalty, was taken at its face value. That a penalty is a penalty for purposes of Anti-Injunction Act and did not bar the court did find, I correctly, Pelley, the city argues correctly that later they found that for purposes of the Congress's taxing power, it was a tax. But that was what they had to decide first was whether the Anti-Injunction Act applied. And they found that the Anti-Injunction Act did not apply because the word penalty was on the statutory text. Here the city itself has submitted information by way of judicial notice in the lower court, in this court, 21.05, I believe B, which talks about the words penalties. That's what in fact was assessed against my client, penalties. And I would also submit that the penalties under 21.05 B talks about penalties as 40 percent of the tax. I would think that that's more than cost of administration. Even if one gets into the argument of whether this is a cost or a deterrence, just on the face of the ordinance itself, it's clearly 40 percent seems to me logically can be implied to be a deterrence and not just the cost of administration. But I do think that Direct Marketing Association, by making the analogy between the Anti-Injunction Act and the Tax Anti-Injunction Act, has probably can, one doesn't need to necessarily get into the circuit split. Because if, in fact, it's merely a question of statutory text, looking at the statutory text, does the text say penalty? And if it does, then we say that that word penalty is not part of an assessment of a tax and not subject to a barred jurisdiction. Then I think that would end the matter. One doesn't necessarily have to go into the circuit split between the Seventh and Fifth Circuit. And with that, I would submit. Thank you. We'll hear from the city. Good morning, Deputy City Attorney Dan Whitley, on behalf of the city of Los Angeles, I think initially I'd like to address some of the points that were raised by appellant, in particular with direct marketing, which the city disagrees that it's going to have any effect. I'm sorry, the city disagrees that will have any effect on the outcome of this case, but it certainly should be addressed. It is precedent that's come out since we argued this in the lower court. I think the key issue in direct marketing isn't whether you're addressing the investigation of a tax or the assessment of the tax. The question that that court is directing us to is, does the relief sought stop an assessment? That could happen either before or after an assessment is made. In direct marketing, what the plaintiffs had asked for is for the court to a court, not the Supreme Court, to address a early stage in the assessment process before a taxpayer had even been identified. They were addressing a notice requirement and a information reporting requirement. Under the Supreme Court's view, if the government was stopped from imposing either of those requirements, no assessments would be stopped and the court's correct. If if the government can't force a seller to report a sale to the government, the government can make an assessment against a use tax assessments unaffected by that court's order. The investigation process may be more difficult. You may need to hire more investigators. You may need to take other procedural actions, but this government can still make that assessment. And so the court then goes on to say that any interference with the investigation process or tax administration process isn't isn't impacted by the tax, the tax injunction act. That's not what we have here. What we have here is a taxpayer saying that an assessment should be undone because the the city's determination was unreasonable because they asked for his records. So here there's no relief the district court can give that wouldn't stop the assessment against the taxpayer. If if the court says, you're right, the city couldn't ask to see your records or you're right, the city had to subpoena your records or any sort of relief that would that would address the plaintiff's complaint. The city could not have made that assessment. The city can't say we're going to ignore the district court's order and still make the assessment. That's not what happened in direct marketing, direct marketing. The government could say, all right, we're not going to set our notice requirement. We can still make we can still make the assessment. In your view, what should our decision be? I have two points to make there. I think that this court should affirm the district court's order.  Another issue that's been raised, though, is I believe that anything that appellant has raised today should be addressed by the principle of comedy under McNary, which then went on to say that although the Tax Injunction Act may not actually even get to the Tax Injunction Act, they just said that under principles of comedy, this this suit should not be taken. Even if this doesn't technically meet the requirements of the Tax Injunction Act, which we would dispute, certainly this is the sort of interference with tax administration that the federal court should be should restrain from doing. This would force the city to change its entire auditing process and it would undo if the court grants relief in this. There's thousands of assessments currently underway that would now be unconstitutional. Given that, I think this falls within the Tax Injunction Act. But even if it doesn't, I would ask the court's response to to affirm the district court's ruling under grounds of comedy. But you wouldn't want us to affirm the district court's ruling that the complaint should be dismissed with prejudice, should it? Well, I believe it should be dismissed with prejudice for two reasons. One is that the appellant was offered a chance to amend the complaint earlier, in particular with the the allegation that the. You don't dispute that Mr. Huang has a state remedy, right? He does have a state remedy. But wouldn't a dismissal with prejudice bar him if he has state remedy? I don't, Your Honor, I don't know. I don't believe so because I believe if it's dismissed on jurisdictional grounds, it would be remanded to the state court. Usually the dismissal on jurisdictional grounds is without prejudice under federal rules, so Procedure 41B. Well, then, Your Honor, we're going to take no position on that. If it's to be affirmed without prejudice, we would not oppose that. You agree the only basis for dismissal is the jurisdictional one. I mean, you're not when you say it should be with prejudice, you're not trying to say there's this alternative reason why the claim should be extinguished forever. Your argument is it's in the wrong place. Exactly, Your Honor. The court never got to our substantive dismissal arguments. Let me ask you about the penalties. Plaintiff argues that penalties should be, pointing to the Seventh Circuit decision in RTC, that penalties should be treated differently, not as covered by the Tax Injunction Act. Why not? Why should they be covered? Well, the main reason is that these are tax penalties. Under any view of penalties under either the Seventh, I believe the Seventh Circuit was not speaking, had not analyzed this as well as they should have. Under any view of a tax penalty, these are not regulating business activity. These aren't regulating behavior. They're regulating revenue-generating activity, which is the basis of what a tax is. That's the whole point of the BIDAR test and every other test every circuit uses, is this to regulate conduct or to collect revenue. This is a late filing penalty. It's just like the late filing penalty under the Federal Internal Revenue Code. If the taxpayer doesn't pay on time, the penalty is imposed. It's just to collect revenue. To the extent it's regulating any conduct, it's tax conduct. And so I think any thorough analysis of that issue should find that these penalties are subject under the Tax Injunction Act. The other problem here is that because these penalties apply automatically, there's no tax. Taxes weren't paid on time. So there's no conduct to be regulated other than the payment of the tax itself. The only way to challenge the tax is to say either I did actually pay it on time, which isn't an issue here, or the amount of tax we owe is less than what the city initially assessed. So these penalties are part and parcel of the underlying assessment. And so under the Tax Injunction Act, any relief that would address these penalties would address the underlying assessment. Are you relying at all on Ninth Circuit precedent for your argument? On BIDAR, yes, which goes through the test, which I can go through. I think our brief addressed that thoroughly, and so did the district court's opinion. These penalties don't regulate any conduct other than tax conduct. They go into the city's general funds, not to some specific purpose. The penalties aren't administered by any regulatory agency. They're administered by the Office of Finance, and they're solely related to the generation of revenues. They don't regulate any business or personal activity. And so under the BIDAR test, there are penalties. And I would point out that under Sebelius, when they're addressing whether something is a tax for constitutional purposes, the court's applying a very similar test where they look at what the point of the penalty is, where the revenues are going, who is imposing it and making that determination. So I see no indication that BIDAR isn't still good law. I have nothing further to add. Thank you. Thank you. Rebuttal. To address Judge Baio's question on BIDAR, at page 17 of the city's brief, it admitted or conceded, I believe, that BIDAR was not necessarily controlling in all situations. There could be situations where, for example, the city imposes a fine on a building code type of inspection, and that would not be under BIDAR. It would be a penalty. So to that effect, I would say that because we have here authority under direct marketing that tells us that we are to take the terms under the Tax Injunction Act the same way that we take it under the Anti-Injunction Act. And because the Supreme Court in Sebelius found for purposes of the Anti-Injunction Act that the text of the statute stated penalties and it means what it says, it says what it means for purposes of that act, even though for later, for purposes of the taxing authority, it found that it was a tax. But for purposes of whether the suit could go forward, it found that it had jurisdiction under the Anti-Injunction Act. I would submit BIDAR is certainly not controlling here. And one need not necessarily create a circuit conflict here between BIDAR, the Seventh and the Fifth Circuit. But to the effect that if the court is going to say that BIDAR is controlling. Further for us, if BIDAR is Ninth Circuit authority against you, and if you say that direct marketing, with reference to Sebelius, has a different rule, it has to be under our rule of Miller v. Gamby, it has to be a clear, subsequent Supreme Court opinion, which is in tension with BIDAR. Now, can you say that about your cases? I would say that the ruling in direct marketing is absolutely clear that the Tax Injunction Act and the Anti-Injunction Act are to be read in parity. And I would say that. And therefore, if under Sebelius, a penalty which was not a tax on Monday in the argument became a tax on Wednesday in the argument, we ought to apply that. I would say that Sebelius demonstrated that a penalty, when looks to the statutory text, not to a rule as BIDAR formulated as to whether it's regulatory or not, for purposes of the Anti-Injunction Act, when looks to the statutory text, if in fact it states penalty, that does not bar a court from hearing a suit under the Anti-Injunction Act. If it didn't bar it in Sebelius, it does not bar it in under the Tax Injunction Act. So to that effect, I would say it is clear. But if one is going to apply BIDAR, as the court says, as you said, Judge Beyer, because you're bound by it, you don't feel it's clear. I think it does complicate the situation and creates a perhaps a circuit conflict with the Seventh Circuit and the Fifth Circuit. As to Comedy, I would say that McNary is not the final word. It was not briefed in the lower court. As I recall, it was not briefed in this court. Direct marketing remanded the case to the Tenth Circuit to brief the issue, to decide the issue of Comedy, that it referenced a subsequent case to McNary. There have been two cases, Hibbs v. Wynn and Levin v. Commerce Energy, Inc., which have talked about Comedy. They've been in different contexts. It's a rather complex issue, I would submit, and I would say that it cannot be just decided by this court, sua sponte. If the court were to decide that any portion of this complaint is not subject to the Tax Injunction Act, but there was a question of Comedy, that it be briefed, that it be sent back, remanded to the district court to decide that in the first instance. Thank you, Your Honor. Thank you, both counsel, for your helpful arguments. Case just argued is submitted. That concludes the arguments for this morning. We're adjourned.
judges: Farris, Clifton, Bea